UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEAN GOODMAN ET AL.                      CIVIL ACTION

VERSUS                                   NO. 06-3799

FIDELITY NATIONAL                        MAGISTRATE JUDGE
INSURANCE COMPANY ET AL.                 JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Plaintiffs, Sean Goodman and his wife Silvia Goodman, filed this action against Fidelity National Insurance Company ("Fidelity"), a Write Your Own ("WYO") carrier that issued a flood insurance policy to plaintiffs under the National Flood Insurance Program ("NFIP"); Robert Sheard and Robert Sheard Insurance Agency, Inc. (collectively "Sheard"), the insurance agents who placed the flood policy with Fidelity; Lexington Insurance Company ("Lexington"), Sheard's errors and omissions insurer; and Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens"), which issued a homeowners insurance policy to plaintiffs.

In their original complaint, plaintiffs allege that, in October 2004, they purchased a flood insurance policy on their house with requested coverage of $240,000. They allege that, because Sheard miscalculated the premium, they paid an insufficient premium for the requested coverage and Fidelity issued a policy with coverage of only about $75,000, based on the premium amount it received. Plaintiffs also claim that Sheard did

not discuss or offer contents coverage to them under the flood policy. They further allege that neither Sheard nor Fidelity notified them of the error in the premium amount, asked for an additional premium payment or told them that the coverage amount had been reduced until after they made a claim against the policy for damages to their house and personal property caused by Hurricane Katrina on August 29, 2005, which claim exceeded the amount of the policy. Plaintiffs' original complaint asserts causes of action against Fidelity, Sheard and Lexington for breach of contract, breach of fiduciary duty of an insurance agent to the insured, detrimental reliance, state law tort liability, misrepresentation, and errors and omissions liability. Plaintiffs seek damages, attorney's fees, prejudgment interest and costs. Record Doc. No. 1, Complaint.

In their Amended Complaint, plaintiffs bring state law claims for damages and penalties against Louisiana Citizens for breach of contract, failure to remit timely payment and breach of the duty of good faith and fair dealing in connection with their homeowners policy. Record Doc. No. 20, Supplemental and Amended Complaint.

All parties have previously consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Record Doc. No. 23.

Fidelity filed a motion for summary judgment, seeking to dismiss all of plaintiffs' claims against it. The motion is supported by an affidavit, several documentary exhibits and excerpts of deposition transcripts. Record Doc. No. 61. Plaintiffs filed a timely

opposition memorandum, supported by some of the same documentary exhibits and additional deposition excerpts. Record Doc. No. 61.

Fidelity received leave to file a reply memorandum. Record Doc. Nos. 63, 66, 67. Because Fidelity's reply memorandum included new exhibits that had not previously been filed, the court gave plaintiffs until August 13, 2008 to file a surreply memorandum to address the new exhibits. Record Doc. No. 69. Plaintiffs' counsel advised my office by telephone on August 11, 2008 that they did not intend to file a surreply, and no surreply was filed by the deadline.

Having considered the complaint, as amended; the record; the submissions of the parties and the applicable law; and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, as follows.

I.      STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required

to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir.

-4-

2000) (quotation omitted) (emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

## II. PLAINTIFFS' CLAIM FOR FAILURE TO PROVIDE CONTENTS COVERAGE

It is undisputed that Sean Goodman knew that contents coverage was available when he applied for the flood insurance policy, that he elected not to obtain contents coverage under the flood policy and that he paid no premium for contents coverage. Defendant's Exh. A, plaintiff's flood insurance application; Defendant's Exh. H, deposition of Sean Goodman at pp. 101-02; Defendant's Exh. K, deposition of Robert Sheard at p. 49.  Plaintiffs do not argue to the contrary in their opposition memorandum.

Accordingly, because there is no disputed issue of material fact for trial, Fidelity is entitled to summary judgment as a matter of law on plaintiffs' claim against it for failure to provide contents coverage.

III.     PLAINTIFFS' EXTRA-CONTRACTUAL CLAIMS

In addition to their breach of contract claim against Fidelity, plaintiffs' original complaint asserts state law causes of action for detrimental reliance, tort liability, misrepresentation, and errors and omissions liability.  Fidelity argues that plaintiffs cannot bring state law claims against it because it issued the flood insurance policy as a fiscal agent of the United States, all flood loss claims are paid from United States Treasury funds and federal law preempts any claims related to the policy.  Plaintiffs respond that their claim arises from Fidelity's negligence in procuring coverage, not in claims handling, and therefore does not fall within the federal preemption.

Plaintiffs purchased their flood insurance policy from Fidelity, a WYO carrier. "[T]he NFIP is a federally-administered program supported by funds drawn from the federal treasury.  The terms of the [policy] are dictated by FEMA, and cannot be waived or modified by [Fidelity]."  Wright v. Allstate Ins. Co., 415 F.3d 384, 388 (5th Cir. 2005).  Claims against a policy issued by a WYO carrier "are actions against federal funds."  Id. at 389.  Thus, "state law tort claims arising from claims handling by a WYO [carrier] are preempted by federal law."  Id. at 390 (emphasis added).

However, the Fifth Circuit noted that district courts in this circuit had interpreted its precedents before <u>Wright</u> "as holding that state law claims based on claims procurement were not preempted, while state law claims based on claims adjustment were." <u>Id.</u> (citing <u>Spence v. Omaha Indem. Ins. Co.</u>, 996 F.2d 793 (5th Cir.1993); <u>West v. Harris</u>, 573 F.2d 873 (5th Cir. 1978)).  The Fifth Circuit did not overrule this perceived distinction, nor did it address the situation of state law tort claims based on issues of coverage procurement, as that was not the case before it.

Cases decided after <u>Wright</u> in this district court continue to distinguish between causes of action arising from claims handling, which are preempted by federal law as stated in <u>Wright</u>, and causes of action arising from coverage procurement, which, in the absence of any clear ruling from the Fifth Circuit, are not preempted.  <u>Dickerson v. State Farm Fire & Cas. Co.</u>, No. 06-5181, 2007 WL 1537631, at *3-4 (E.D. La. May 23, 2007) (McNamara, J.) (citing <u>Richmond Printing LLC v. Director Fed. Emergency Mgmt. Agency</u>, 72 Fed. Appx. 92, 2003 WL 21697457 (5th Cir. 2003); <u>Wright</u>, 415 F.3d at 390); <u>Seruntine v. State Farm Fire & Cas. Co.</u>, 444 F. Supp. 2d 698, 701 (E.D. La. 2006) (Vance, J.) (citing <u>Wright</u>, 415 F.3d at 390; <u>Cosse v. B.G. Mate</u>, No. 06-2590, 2006 WL 1968868, at *2 (E.D. La. July 7, 2006) (McNamara, J.); <u>Landry v. State Farm Fire & Cas. Co.</u>, 428 F. Supp. 2d 531, 534-36 (E.D. La. 2006) (Fallon, J.); <u>Waltrip v. Brooks Agency, Inc.</u>, 417 F. Supp. 2d 768, 770 (E.D. Va. 2006); <u>Roybal v. Los Alamos Nat'l Bank</u>, 375

F. Supp. 2d 1324, 1332-33 (D.N.M. 2005); <u>Corliss v. South Carolina Ins. Co.</u>, No. 03-2944, 2004 WL 2988497, at *3 (E.D. La. Dec. 14, 2004) (Vance, J.)); <u>Moore v. USAA Gen. Indem. Co.</u>, No. 02-2021, 2002 WL 31886719, at *3 (E.D. La. Dec. 19, 2002) (Vance, J.); <u>Powers v. Autin-Gettys-Cohen Ins. Agency, Inc.</u>, No. 00-1821, 2000 WL 1593401, at *3-4 (E.D. La. Oct. 24, 2000) (Duval, J.); <u>accord</u> <u>Reeder v. Nationwide Mut. Fire Ins. Co.</u>, 419 F. Supp. 2d 750, 761-63 (D. Md. 2006).

Fidelity argues that some of the cases cited above involved claims for failure to procure coverage brought against WYO insurers such as State Farm and Allstate, who employ their own agents, and that those cases do not apply to the instant case because Sheard was not an employee of Fidelity, but was an independent insurance agent who acted on plaintiffs' behalf.  However, some of the cases involving State Farm and Allstate suggest that their holdings are not limited to companies that employ their own agents.  <u>See, e.g.</u>, <u>Dickerson</u>, 2007 WL 1537631, at *3-4; <u>Roybal</u>, 375 F. Supp. 2d at 1332-33.  Furthermore, as in the instant case, the plaintiffs in <u>Reeder</u> and <u>Powers</u> sued both the independent agent and the WYO company, while plaintiffs in <u>Moore</u> sued the flood insurer only.  The courts in these cases held that plaintiffs stated viable, state law tort claims against the WYO company arising out of procurement of the policy.

The Goodmans allege that Fidelity was negligent in procuring the full amount of insurance that plaintiffs requested and in failing to notify them of the deficient premium and reduced coverage.  The allegations against the insurer in Moore were similar:

> [P]laintiffs allege that defendant, as its homeowners/fire/liability [and flood] insurer, should have noticed that their flood insurance was too low and should have informed them of this.  In addition, plaintiffs allege that defendant mailed out "misleading notifications regarding policy coverage options which would have continued to result in a gap in coverage." (Petition § VII.) These allegations have nothing to do with payment under an SFIP [Standard Flood Insurance Policy].  44 C.F.R. § 62, App. A, Art. III.  The claims have everything to do with the manner in which defendant procured customers for the policy. Id. The federal interest in such a claim is "attenuated."

Moore, 2002 WL 31886719, at *4 (quoting Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 796 (5th Cir. 1993)).

Based on the consistent holdings of judges in this district court and in the absence of contrary Fifth Circuit precedent, the Goodmans' state law tort claims against Fidelity for failure to procure the requested insurance coverage are not preempted by federal law. Accordingly, Fidelity's motion for summary judgment on these claims is denied.

IV.   PLAINTIFFS' BREACH OF CONTRACT CLAIM

In their breach of contract claim, plaintiffs seek a retroactive increase in the building coverage amount from $75,600, which was based on the insufficient premium that they paid, to $240,000, the amount that they had requested.  Pertinent provisions of

the Code of Federal Regulations, which are incorporated in the Standard Flood Insurance

Policy ("SFIP"), allow for reformation of a policy upon discovery by the insurer, before

a flood loss, of the insufficient premium paid, if the insurer provides notice to the insured

of the amount of additional premium needed and the insured pays the deficiency within

30 days.  44 C.F.R. Pt. 61, App. A(1)(VII)(G)(2)(a)[1]; see Connell v. Allstate Ins. Co., No.

06-4820, 2007 WL 4233830, at *3 (E.D. La. Nov. 28, 2007) (Duval, J.) (quotation

omitted) (flood policy can "be reformed if it squarely fit[s] within the provisions

enunciated by the terms of the SFIP").  Fidelity's motion for summary judgment on this

claim cannot be granted because material fact issues are in dispute concerning whether

Fidelity complied with those terms.

---

[1]This regulation provides as follows:
                    G.  Reduction and Reformation of Coverage
1.  If the premium we received from you was not enough to buy the kind and amount of
coverage you requested, we will provide only the amount of coverage that can be
purchased for the premium payment we received.
2.  The policy can be reformed to increase the amount of coverage resulting from the
reduction described in G.1. above to the amount you requested as follows:
a.  Discovery of Insufficient Premium or Incomplete Rating Information Before a Loss:
(1)  If we discover before you have a flood loss that your premium payment was not
enough to buy the requested amount of coverage, we will send you and any mortgagee
or trustee known to us a bill for the required additional premium for the current policy
term (or that portion of the current policy term following any endorsement changing the
amount of coverage).  If you or the mortgagee or trustee pay the additional premium
within 30 days from the date of our bill, we will reform the policy to increase the amount
of coverage to the originally requested amount effective to the beginning of the current
policy term (or subsequent date of any endorsement changing the amount of coverage).

Fidelity's vice president of claims, Deborah Price, testified that, when the premium received is insufficient to obtain the coverage requested, Fidelity's standard practice is to send a notice of deficient premium to the insurance agent, the insured and the insured's mortgage company. Sheard testified that he received the notice of deficient premium that Fidelity faxed to him on November 4, 2004. However, Price admitted that nothing in Fidelity's file concerning the Goodmans confirmed that the same notice was actually sent to plaintiffs or their mortgagee.

Similarly, Price testified that Fidelity's standard practice is to send a copy of the declarations page, which shows the coverage amount of the policy, to the insurance agent, the insured and the mortgagee. Although she testified that Fidelity's file on the Goodmans' policy shows that the declarations page was issued on November 22, 2004, she admitted that nothing in the file confirmed that the declarations page was actually sent to the Goodmans or their mortgagee. Record Doc. No. 52, Defendant's Exh. J, deposition of Deborah Price at pp. 10-11, 15-18, 21-22; Record Doc. No. 61, Plaintiff's Exh. D, Price deposition at pp. 19-20, 42.

Mrs. Goodman testified, in response to a question whether she remembered receiving the declarations page, that she did not recall ever receiving it. She also stated that the document did not look familiar. In response to a question whether he remembered receiving the declarations page, Mr. Goodman testified that he did not recall

ever receiving it.  Record Doc. No. 6304, Defendant's Exh. B in globo to Fidelity's reply

memorandum, deposition of Silvia Goodman at pp. 43-44, deposition of Sean Goodman

at pp. 41-42.  Although Fidelity argues that this testimony by plaintiffs is not equivalent

to testifying that they never actually received the document, I find the testimony

sufficient to raise a question of material fact for trial.

Therefore, material fact issues are in dispute, including whether Fidelity followed

its standard operating procedure and mailed to plaintiffs and their mortgagee a letter

dated November 4, 2004, advising that the premium paid was deficient and that the

coverage amount would be decreased if an additional premium payment was not

received, Defendant's Exh. E; whether Fidelity followed its standard operating procedure

and mailed to plaintiffs and their mortgagee on or about November 22, 2004 the

declarations page of their flood insurance policy that reflected the $75,600 coverage

amount, Defendant's Exh. F; whether plaintiffs received the letter and/or the declarations

page from Fidelity; and whether Sheard orally advised either or both plaintiffs of the

premium deficiency and/or the reduced coverage amount.

Accordingly, Fidelity's motion is denied as to plaintiffs' breach of contract claim.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The motion is GRANTED and plaintiffs' claim against Fidelity for failing to provide contents coverage is DISMISSED WITH PREJUDICE.

The motion is DENIED as to plaintiffs' claims against Fidelity of breach of contract for failure to provide the amount of building coverage that plaintiffs requested in their application for flood insurance and of detrimental reliance, state law tort liability, misrepresentation, and errors and omissions liability.

New Orleans, Louisiana, this __14th__ day of August, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE